UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| O'NEIL FRANCIS, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION NO. |
| | ) | 11-11239-DPW |
| v. | ) | |
| | ) | |
| SCOTT ANDERSON, | ) | |
| Superintendent, MCI Shirley, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

MEMORANDUM AND ORDER
September 11, 2012

After unsuccessfully appealing his convictions for second degree murder and gun possession in Massachusetts state court, petitioner O'Neil Francis now seeks a federal writ of habeas corpus.  As grounds for federal relief, Francis argues that his Sixth Amendment Confrontation Clause right was violated during his trial when he was not permitted to cross examine a witness about a criminal matter that had been dismissed against her. Concluding that Francis is not entitled to relief in this court, I will deny his petition.

**I.   BACKGROUND**

A.   Facts

When federal courts examine a petitioner's claims on habeas review, state court factual determinations are presumed correct absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Miller-El* v. *Cockrell*, 537 U.S. 322, 340 (2003).

Here, Francis does not dispute the facts, so I recount them as

the Massachusetts Appeals Court did.

> On March 18, 2005, Tacary Jones was shot and killed
> while boarding an MBTA bus in the Dorchester section of
> Boston.
>
> . . .
>
> Eyewitnesses testified that the defendants boarded the
> bus together and sat down together.  As the bus
> approached the Geneva Avenue bus stop, witnesses saw
> Hodge [Francis's co-defendant] pass a camouflage knife
> to Francis, who passed it back to Hodge; and, when the
> victim and his friends boarded the bus at that stop,
> both defendants got up to exit and confront the victim.
> Shalonda Smith testified that she heard Hodge say,
> "[W]e've got that thing," and "[W]e could get him now,
> why wait, like, what are we waiting for," and "I should
> shank him up," at which point Francis pulled out a
> palm-sized gun.  Another witness, who was driving
> directly behind the bus, heard a "loud pop," and saw
> both defendants standing outside the rear of the bus,
> smiling and laughing.  The same witness also saw Hodge
> tuck a black, semiautomatic gun into his waistband or
> pants pocket.  The defendants were observed fleeing
> from the scene together and later were seen running
> away from the place where the murder weapon was found
> together with an army knife and clothing matching that
> worn by Hodge.

*Commonwealth* v. *Francis*, 936 N.E.2d 453 (table), 2010 WL 4451102,

at *1 (Mass. App. Ct. Nov. 9, 2010).

Francis and Hodge were charged with second degree murder and

with carrying a firearm without a license.  At trial, Francis

sought to impeach Shalonda Smith, in an effort to show that she

was biased, by eliciting that three separate criminal charges

against her arising from an unrelated event were dismissed prior

to her testimony at the Francis trial.  The trial judge refused

to permit Francis to impeach Smith using the dismissed charges,
noting that the dismissal of these criminal matters occurred
almost a full year after Smith had already testified before the
grand jury in Francis's case and offered her recollections under
oath.

The jury convicted each defendant of both charges.  On March
27, 2007, Francis was sentenced to life in prison for the second
degree murder charge, and a concurrent sentence of four to five
years in prison for the gun possession charge.

B.   Post-Trial Proceedings

Francis timely appealed, and the Massachusetts Appeals Court
affirmed his conviction on November 9, 2010.  *Francis*, 2010 WL
4451102 at *2.  The Massachusetts Supreme Judicial Court denied
further appellate review on April 27, 2011.  *Commonwealth* v.
*Francis*, 947 N.E.2d 42 (table) (Mass. 2011).  Having exhausted
his state direct appeal remedies, Francis timely filed this
petition on July 14, 2011.

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, a federal court may
grant a state prisoner habeas relief if the state court's
decision on the merits "resulted in a decision that was contrary
to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of
the United States."   28 U.S.C. § 2254(d)(1).

The Supreme Court has held that "clearly established federal
law" only "refers to the holdings, as opposed to the dicta, of
[the Supreme] Court's decisions as of the time of the relevant
state-court decision."   *Williams* v. *Taylor*, 529 U.S. 362, 412
(2000).   A decision is "contrary to" clearly established federal
law "if the state court arrives at a conclusion opposite to that
reached by [the Supreme Court] on a question of law or if the
state court decides a case differently than [the Supreme] Court
has on a set of materially indistinguishable facts."   *Id.* at 413.

An "unreasonable application of" clearly established federal
law occurs "if the state court identifies the correct governing
legal principle from [the Supreme] Court's cases but unreasonably
applies it to the facts of the . . . prisoner's case."   *Id*. at
407.   An application of clearly established federal law is
unreasonable under this standard only if it is "objectively
unreasonable," not merely if it is incorrect.   *Id.* at 409; *see
also Grant* v. *Warden, Me. State Prison*, 616 F.3d 72, 76 (1st Cir.
2010) ("Under this deferential standard, the state court's
decision is not vulnerable unless it evinces some increment of
incorrectness beyond mere error." (citation and internal
quotation marks omitted)).   The First Circuit has interpreted the
"unreasonable application" standard to mean that "if it is a

close question whether the state decision is in error, then the

state decision cannot be an unreasonable application."  *L'Abbe* v.

*DiPaolo*, 311 F.3d 93, 98 (1st Cir. 2002) (citation and quotation

marks omitted).

Courts look to the last reasoned state court decision in

determining a petitioner's eligibility for federal habeas relief.

*Malone* v. *Clarke*, 536 F.3d 54, 63 (1st Cir. 2008) (citation

omitted).  In this case, the last reasoned decision is contained

in the opinion of the Massachusetts Appeals Court.  *Francis*, 936

N.E.2d 453 (table), 2010 WL 4451102.

### III.  DISCUSSION

Francis claims that the state trial judge violated his

Confrontation Clause rights by preventing him from introducing

impeachment evidence showing that Smith's criminal charges were

dismissed by prosecutors before she testified at Francis's

trial.[1] He claims that the error was prejudicial because Smith

testified that it was Francis, not Hodge, who pulled out a gun.

---

[1] Francis also suggests in his petition that the trial judge
restricted counsel's ability to inquire about which defendant
shot the victim.  That claim, however, is being raised for the
first time in this habeas petition; it was not presented in this
form to the state courts.  Therefore, it is unexhausted and not
properly grounds for habeas relief.  *See* 28 U.S.C. §
2254(b)(1)(A) (instructing that habeas relief "shall not be
granted unless it appears that the applicant has exhausted the
remedies available in the courts of the State"); *see also*

In controlling the presentation of evidence, "trial judges
retain wide latitude insofar as the Confrontation Clause is
concerned to impose reasonable limits on such cross-examination
based on concerns about, among other things, harassment,
prejudice, confusion of the issues, the witness' safety, or
interrogation that is repetitive or only marginally relevant."
*Delaware* v. *Van Arsdall*, 475 U.S. 673, 679 (1986).  Indeed, "the
Confrontation Clause guarantees an *opportunity* for effective
cross-examination, not cross-examination that is effective in
whatever way, and to whatever extent, the defense might wish."
*Delaware* v. *Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in
original).

To make out a Confrontation Clause violation, a criminal
defendant must show (1) "that he was prohibited from engaging in
otherwise appropriate cross-examination designed to show a
prototypical form of bias on the part of the witness, and thereby
'to expose to the jury the facts from which jurors . . . could

---

*Coningford* v. *Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011)
(noting that "a petitioner's failure to present his federal
constitutional claim to the state courts is ordinarily fatal to
the prosecution of a federal habeas case").  In any event, to the
degree this reformulated claim can be said to be a separate basis
for relief at all, it is wholly without merit because the trial
judge did not restrict Francis's ability to inquire into the
identity of the shooter.  *See* 28 U.S.C. § 2254(b)(2) ("An
application for a writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust
the remedies available in the courts of the State."); *see also*
*Coningford*, 640 F.3d at 483-84 (noting same).

appropriately draw inferences relating to the reliability of the witness,'" *Van Arsdall*, 475 U.S. at 680, and (2) that the error was not harmless.  *Id.* at 684.  Whether a Confrontation Clause error is harmless depends upon a number of factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  *Id.*

The Massachusetts Appeals Court denied Francis's Confrontation Clause claim because

> [t]he [trial] judge did not abuse his discretion in refusing to permit the defendants to impeach Smith by eliciting that a criminal matter of hers had been dismissed by the prosecution prior to trial.  Nothing suggested that the dismissal was related to Smith's testimony in this case.  To the contrary, as the trial judge noted, the dismissal occurred almost a full year after Smith already had testified before the grand jury and given her statement in this case.

*Francis*, 936 N.E.2d 453, 2010 WL 4451102, at *2.

The decision of the Massachusetts Appeals Court was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  First, the state court correctly found that the proffered impeachment was immaterial. Smith gave a statement to police on March 18, 2005 and testified before the grand jury on April 7, 2005 in the Francis matter.

Smith was arraigned on the separate criminal matters with which

Francis sought to impeach her nearly a year later on March 27,

2006. These charges stemmed from an altercation with an

individual the day prior and were dismissed on September 29,

2006, substantially before Smith's testimony at Francis's trial,

because prosecutors could not find the victim, who they

apparently concluded had given a false name. A review of Smith's

March 18, 2005 statement to the police,[2] April 7, 2005 testimony

before the grand jury, and her February 28, 2007 testimony at

trial reveals that Smith's statements and testimony were largely

consistent.

This case is unlike *Van Arsdall*, where the Supreme Court

held that a defendant's Confrontation Clause rights had been

violated by a trial court's ruling preventing a defendant from

cross examining a witness on a prior criminal charge, where the

cross-examination would have revealed that criminal charge had

been dropped in exchange for an explicit promise to testify for

the prosecution in the case at hand. *Van Arsdall*, 475 U.S. 676.

Here, Smith's criminal charge arose after Smith had given her

statement to police and testified before the grand jury, and the

---

[2] This statement was apparently not before the state courts in considering Francis's objection to the limitation on his cross examination of Smith. In the ordinary course of discovery it would, however, have been made available to Francis's counsel. I have reviewed the statement to determine whether any material inconsistencies appear between her statement to the police the day after the incident and her trial testimony some two years later.

reason the charge was dropped was because the victim could not be found, not in exchange for Smith's testimony against Francis.

Second, if any error occurred, it was harmless beyond a reasonable doubt. *Id.* at 684. Francis's counsel, who had access to Smith's prior statements, thoroughly cross examined her and vigorously impeached her through reference to alleged inconsistencies in her testimony and on the basis that she did not actually see who shot the gun. And even without Smith's testimony, there were a number of other "eyewitnesses who confirmed the presence and active participation of both defendants in the episode resulting in the victim's death," such that "a reasonable jury could find that Francis was guilty of second degree murder and unlawful possession of a firearm regardless of who fired the fatal shot." *Francis*, 936 N.E.2d 453, 2010 WL 4451102 at *1. Because the prosecution's case was strong, Smith's testimony was cumulative, and the other evidence tended to corroborate Smith's testimony, any Confrontation Clause error was harmless.

Thus, because under either prong Francis failed to make out a claim for a Confrontation Clause error, the Massachusetts Appeals Court's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

## IV.   CONCLUSION

For the reasons set forth above, I DENY Francis's petition for a writ of habeas corpus and direct the Clerk to dismiss the petition.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE